**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
MICHAEL J. LEVANTINO,

                    Plaintiff,

          -against-

NEW YORK STATE POLICE, KEITH M.
SKALA, in his official and individual capacity,
NY STATE POLICE INVESTIGATOR JOHN
DOE # 1, in their official and individual
capacity, NY STATE POLICE
INVESTIGATOR JOHN DOE # 2, in their
official and individual capacity,

                    Defendants.
---------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
14-cv-974 (ADS)(ARL)

**APPEARANCES:**

**Scott Michael Miskin, PC**
*Attorneys for the Plaintiff*
One Suffolk Square Suite 240
Islandia, NY 11749
          By:     Kyle T. Pulis, Esq., Of Counsel

**Eric T. Schneiderman, Attorney General of the State of New York**
*Attorneys for the Defendants*
200 Old Country Road, Suite 240
Mineola, NY 11501
          By:     Dorothy O. Nese
                    Toni E. Loque
                    Valerie Singleton
                    Assistant Attorneys General

**SPATT, District Judge.**

          On February 12, 2014, the Plaintiff Michael J. Levantino (the "Plaintiff") commenced

this action pursuant to 42 U.S.C. § 1983 against the Defendants New York State Police and three

individual state troopers, Keith M. Skala, John Doe # 1, and John Doe #2 (collectively the

"Defendants").  In essence, the complaint alleged that the Defendants lacked probable cause to

arrest and detain the Plaintiff for possession of marijuana; falsely imprisoned the Plaintiff; and violated his federal constitutional rights to due process and equal protection of the law.

On July 2, 2014, the New York State Police and Skala moved pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) to dismiss the complaint as against them for failure to state a claim upon which relief can be granted.

On September 21, 2014, the Plaintiff cross-moved pursuant to Fed. R. Civ. P. 15(a) for leave to amend the complaint.

Where, as here, the Plaintiff seek to amend his complaint while a motion to dismiss is pending, a court "has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion as moot to considering the merits of the motion in light of the amended complaint." Roller Bearing Co. of Am., Inc. v. Am. Software, Inc., 570 F. Supp. 2d 376, 384 (D. Conn. 2008)(internal quotation marks and alteration omitted). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Annunziato v. Collecto, Inc., 293 F.R.D. 329, 333 (E.D.N.Y. 2013)(citing Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002)). "Therefore a proposed amendment is not futile if it states a claim upon which relief can be granted." Waltz v. Board of Educ. of Hoosick Falls Cent. School Dist., No. 1:12–CV–0507 (GTS)(CFH), 2013 WL 4811958, *4 (N.D.N.Y. Sept. 10, 2013)(citations omitted).

As each claim in the proposed amended complaint must be examined under a 12(b)(6) analysis in any event, the Court exercises its discretion to deny the motion to dismiss as moot. Further, the Court grants in part and denies in part the Plaintiff's cross-motion to amend the complaint.

# I.    BACKGROUND

Unless stated otherwise, the following facts are drawn from the complaint.

On May 30, 2013, the Plaintiff left work and arrived at his home at approximately 5:45 p.m.  Upon arriving at home, the Plaintiff exited his vehicle and walked to the mailbox station at his apartment complex, when he noticed two men approaching him.  Initially, the Plaintiff believed that the two men were salesmen and ignored them.  The two men then confronted the Plaintiff, questioning him about his identity without identifying themselves.  The men asked if the Plaintiff was Michael Levantino and, in response, the Plaintiff asked who they were.

One of the men then raised his badge and identified himself as a police officer.  The Plaintiff immediately apologized and explained that he had thought they were salesman.  The officers then asked the Plaintiff about his knowledge of a marijuana farm.  The Plaintiff denied having any such knowledge.  The officers responded: "That's not what we heard" and told the Plaintiff that they were going to need him to go down to the police station to answer some questions. (Compl., at ¶ 19.)

The Plaintiff asked the officers if he could place his belongings inside his home before they brought him to the police station, to which the officers responded "yes."  However, when the Plaintiff unlocked the door to his apartment, one of the officers blocked the Plaintiff from entering his home, placed his hand on his gun, and told the Plaintiff that he was going in first.  The Plaintiff contends that he did not consent to the officers entering his home, nor did he consent to the officers searching his home.  The Plaintiff was told to wait outside while one officer watched him, and the other swept the Plaintiff's apartment.

The Plaintiff then asked the officers if they could close the door behind them because he did not want his cats getting out, and one of them responded, "you have much bigger problems."

(Compl., at ¶ 28.)  After the officer conducted the warrantless search of the Plaintiff's home, he advised the Plaintiff that he was free to enter.  The search of the Plaintiff's home did not uncover any illegal items, substances, or evidence related to a marijuana farm.

Once the Plaintiff entered his apartment, the officer told him to leave anything that he did not need.  The Plaintiff left his belongings on the couch because the officers prohibited the Plaintiff from entering any further into his own apartment.  The Plaintiff exited the apartment with the officers and they directed him to one of the police cars parked in front.  When the Plaintiff reached the car, one of the officers told the Plaintiff to put his hands behind his back.  The officers then handcuffed the Plaintiff and placed him in the police car.

The Plaintiff contends that his neighbors were outside watching as he was handcuffed and placed in the police car, thereby causing him to suffer emotional distress and embarrassment.  The Plaintiff asked one of the officers why he had to report his vehicle mileage to the dispatcher before they left, and the officer responded that it was so "they could track his mileage if he decided to drive plaintiff to a remote location to assault plaintiff before bringing him into the station." (Compl., at ¶ 46.)  While in the vehicle, the Plaintiff complained that his handcuffs were too tight, cutting off his circulation, but the officer refused to loosen the cuffs, stating that it would not be much longer before they arrived at their destination.

The Plaintiff asked what he had done to be handcuffed and detained, and the officers refused to answer, only responding that the Plaintiff should know.  The Plaintiff then inquired as to whether one of the officers had a brother because he looked like one of the Plaintiff's co-workers, and the officer responded in an aggressive tone: "you think you know me?" (Compl., at ¶ 48.)  The Plaintiff then became nervous and remained quiet for the remainder of the drive.

Upon the Plaintiff's arrival at the State Police office, the Plaintiff was searched, and his possessions were removed from him, including his keys, wallet, and cell phone. The Plaintiff was then handcuffed to a bench in the office where he was unable to move or exit the police station. The Plaintiff was not free to go, as he was handcuffed to the bench. To this point, the Plaintiff had not been read his Miranda rights. The Plaintiff asked why he was being held, and the officers responded that the Plaintiff was in "really big trouble." (Compl., at ¶ 54.) The officers then explained to the Plaintiff that he was observed at a farm that was growing marijuana. The Plaintiff immediately denied any involvement and demanded that the officers provide some proof, as he had no idea what the officers were talking about. While detained against his will, the officers searched through the Plaintiff's wallet.

Without reading the Plaintiff his Miranda rights, the officers questioned the Plaintiff about his involvement with a marijuana farm, to which the Plaintiff responded that he had no such knowledge and that they had arrested the wrong person. The Plaintiff then explained that whomever they believed had witnessed the Plaintiff at the farm was mistaken. The officers explained to the Plaintiff that they had pictures of him at the farm, but, at that time, refused to show them to the Plaintiff.

After approximately one hour of being chained to the bench, one of the officers escorted the Plaintiff to an interrogation room where another officer sat across from him. The officer presented a photograph to the Plaintiff and stated that it was a photograph of the Plaintiff walking out of the woods in which the marijuana farm was discovered. The Plaintiff denied that he was the individual in the photograph, and the officer stated: "I guess you're going to be spending the night." (Compl., at ¶ 56.) The Plaintiff was then escorted back to the office and was chained to the bench once again. At some point, the Plaintiff asked the officers what day of

the week the pictures were taken because he could prove that it was not him, as he worked more than fifty hours a week. The officers responded that they knew it was the Plaintiff; that they had him under surveillance for six months and personally witnessed him going to and from the marijuana farm. The officers allegedly told the Plaintiff that they had incriminating pictures of him, and that he would be going away for a long time.

The officers later read the Plaintiff his Miranda rights and told him that he was under arrest, despite the fact that he had already been handcuffed for hours and was not able to leave, and subject to numerous interrogations. After the Plaintiff was read his Miranda rights, he was asked if he had any visible or identifiable tattoos or scars. The Plaintiff advised the officers that he did not have any tattoos and only one scar from a hernia operation.

While under arrest, the Plaintiff asked for a glass of water, as he had been detained for hours with nothing to drink or eat. The officers refused to give the Plaintiff a drink and told him that there was a soda machine in the lobby, and if the Plaintiff had money in his wallet, he could buy a drink. The officers then removed money from the Plaintiff's wallet and bought the Plaintiff a drink from the machine, complaining that he then had to re-inventory the Plaintiff's belongings when he returned. The Plaintiff spent a few more hours handcuffed to the bench, while the officers found a place to send the Plaintiff for the night. When it was time for the Plaintiff to be relocated, the officers uncuffed him from the bench and cuffed his hands behind his back.

The Plaintiff was eventually transported to the 3rd Precinct in Brentwood, New York to spend the night. When he arrived, he was brought into a holding area and was told to remove all his clothes except for his underwear. When the Plaintiff removed his clothes, it again became clear that he did not have any tattoos. After the Plaintiff was searched, he was told to get dressed

and to follow one of the officers to an available cell, which was approximately 4 by 7 feet and consisted of two 12 by 2 feet boards attached to the wall as a bed, a plastic bag for a blanket, and a toilet/sink. The walls were covered with urine, feces, spit, and other bodily excretions. After a while, one of the officers approached the cell and told the Plaintiff to follow him to an interrogation room.

While in the interrogation room, the officers questioned the Plaintiff about recent murders that happened in the Brentwood area, to which the Plaintiff replied that he had no knowledge other than hearing about the incidents. The Plaintiff was not questioned about the marijuana farm during this interrogation. After the interrogation, the Plaintiff was then returned to his cell. When the Plaintiff asked for a pillow, he was told that he could use the toilet paper roll as a pillow, which was covered in urine.

Sometime the next morning, the Plaintiff was removed from his cell, searched again, and placed on a chain with two other prisoners. The Plaintiff was then loaded on a bus and transported to the Islip Courthouse. When the Plaintiff arrived, he was escorted inside the building with the other prisoners, and was once again searched and placed in a holding cell. The Plaintiff was eventually brought before a judge, with a public defender, and was told that he would be released on $10,000 dollars cash, or $20,000 bond. The Plaintiff was then returned to a holding cell where he remained for several hours alone. The Plaintiff was detained for almost twenty-four hours despite the Defendants allegedly not having an arrest warrant and/or probable cause for the arrest. The Plaintiff was released on bail later that day and retained a criminal defense attorney shortly thereafter.

Approximately two weeks later, the Plaintiff met with his attorney and once again reviewed the photographs provided by the New York State police. The individual in the

photographs had a tattoo on his left bicep. The Plaintiff was then photographed with his shirt off and the pictures were sent to the Assistant District Attorney ("ADA") assigned to the case. The following day, the Plaintiff's attorney called the ADA to confirm his receipt of the photographs and the ADA replied "oh my god! We got the wrong guy!" (Compl., at ¶ 117.) The ADA then set up a meeting with the Plaintiff and his attorney and stated that he wanted the case dismissed as soon as possible.

On June 21, 2013, the Plaintiff went to the DA's office with his attorney and met with the ADA, along with a detective. There, the ADA apologized to the Plaintiff for everything that he had went through, stated that it never should have happened that way, and the officers had arrested the wrong guy. The detective then asked the Plaintiff to raise the sleeve of his left bicep, which he did, and then confirmed that the Plaintiff was not the individual in the photographs of the marijuana farm. The ADA confirmed that all charges against the Plaintiff would be dropped, and that the case would be dismissed. The ADA then apologized to the Plaintiff again.

On July 1, 2013, all charges against the Plaintiff were dropped and the case was dismissed.

On February 12, 2014, the Plaintiff commenced this action against the New York State Police and three individual state troopers, Keith M. Skala – one of the arresting officers – John Doe # 1, and John Does #2 (the "Individual Defendants"). Pursuant to 42 U.S.C. § 1983, the Plaintiff asserted the following claims against the individual defendants only: (i) false arrest and imprisonment, (ii) punishment "without Due Process and Equal Protection of the law," and (iii) "cruel and inhumane punishment" in violation of the Eighth Amendment. The Plaintiff also asserted pendent state law claims against the State Police and the Individual Defendants for false

arrest, false imprisonment, negligence, gross negligence, *prima facie* tort, and "negligent hiring, retention, and supervision" of the State Police's employees and agents.

For the alleged federal constitutional violations, the Plaintiff sought (i) injunctive and equitable relief against the individual defendants in their official capacities; and (ii) damages against the individual defendants in their individual capacities. For the alleged state law violations, the Plaintiff sought "actual, compensatory, emotional and punitive damages" against the State Police and the individual defendants. He also sought "the equitable relief of the immediate expunging of [his] arrest, and record," and "corrective action for all defendants involved in said wrongdoing."

As noted above, on July 2, 2014, the State Police and Skala moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the complaint as against them for failure to state a claim upon which relief can be granted. First, they argued that Eleventh Amendment immunity barred all claims against the State Police. Second, they argued that (1) Eleventh Amendment immunity barred all claims for damages, injunctive relief, and equitable relief against Skala in his official capacity; (2) the Plaintiff failed to state a claim under Section 1983 against Skala in his individual capacity; (3) in any event, Skala was entitled to qualified immunity for any claims against him in his individual capacity; and (4) the Plaintiff failed to state a state law claim or, in the alternative, that this Court should decline to exercise supplemental jurisdiction over the state law claims.

On August 21, 2014, the Plaintiff cross-moved pursuant to Fed. R. Civ. P. 15(a) for leave to file an amended complaint. The Plaintiff proposes, among other things, to remove the New York State Police as a defendant; (2) add officer Brian Horgan, one of the arresting officers, as a defendant; (3) remove the equal protection claim, the "punishment" claim under the Eighth and

Fourteenth Amendment, the negligence claim, the gross negligence claim, as well as the expunging request.

In the proposed amended complaint, the Plaintiff asserts the following claims against Skala, Horgan, and John Doe in their individual capacities: (1) false arrest and imprisonment in violation of the Fourth Amendment, (2) "deprivation of [the Plaintiff]'s liberty interest without Due Process of law in violation of [his] Fourteenth Amendment Due Process rights," (3) "an illegal search without probable cause in violation of [his] Fourth Amendment Constitutional right," and (4) "false arrest, false imprisonment, and in the alternative, prima facie tort" under New York State law. Instead of "injunctive and equitable relief," the Plaintiff requests "declaratory and injunctive relief" against the individual defendants in their official capacities.

## II.    DISCUSSION

To the extent the Plaintiff removes the State Police as a defendant and removes the above-mentioned causes of action, the motion is granted. With regard to the causes of action asserted in the proposed amended complaint, it is well-settled that "[l]eave to file an amended complaint shall be freely given when justice so requires, Fed. R. Civ. P. 15(a), and should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." Milanese v. Rust—Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001)(quoting Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)(internal quotation marks omitted).

In considering whether a proposed amendment would be futile, "the appropriate legal standard is whether the proposed complaint fails to state a claim, the traditional Fed. R. Civ. P. 12(b) standard." New Hampshire Ins. Co. v. Total Tool Supply, Inc., 621 F. Supp. 2d 121, 124 (S.D.N.Y. 2009). The Court now turns to the proposed causes of action.

A.  The False Arrest and Imprisonment Claims Under Federal and State Law

Section 1983 claims for false arrest and false imprisonment are "substantially the same" in all relevant respects as claims for false arrest and false imprisonment under state law. See Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003).  In addition, false arrest and false imprisonment are synonymous causes of action because the elements of the claims are identical. Murray v. Williams, No. 05 CV 9438, 2007 U.S. Dist. LEXIS 11321, 2007 WL 430419, at *5 (S.D.N.Y. Feb. 8, 2007)(citing Covington v. City of New York, 171 F.3d 117, 125 (2d Cir. 1999), cert. denied, 528 U.S. 946, 120 S. Ct. 363, 145 L. Ed. 2d 284 (1999)).

In order to establish a claim for false arrest or false imprisonment under New York State law, a plaintiff must show that: (1) the defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise justified. Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (1995)(citing Broughton v. State of New York, 37 N.Y.2d 451, 456, cert. denied, 423 U.S. 929, 96 S. Ct. 277, 46 L. Ed. 2d 257 (1975)); Smith v. City of New York, 388 F. Supp. 2d 179, 184 (S.D.N.Y. 2005).

In addition, it is well established that probable cause to arrest is a complete defense to a claim of false arrest or false imprisonment. See e.g., Betts v. Shearman, 751 F.3d 78, 82 (2d Cir. 2014); see Pierson v. Ray, 386 U.S. 547, 557, 87 S. Ct. 1213, 18 L. Ed. 2d 28 (1967)(extending the defense of good faith and probable cause, available to officers in common-law actions for false arrest and imprisonment, to actions under Section 1983).  "In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant v. Okst, 101 F.3d

845, 852 (2d Cir. 1996). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and knowledge of the officers." Id.

It is "of no consequence" to a probable cause determination "that a more thorough or more probing investigation might have cast doubt upon the situation." Fabrikant v. French, 691 F.3d 193, 214–15 (2d Cir. 2012)(quoting Krause v. Bennett, 887 F.2d 362, 371 (2d Cir. 1989)). It is well-established that "[t]he fact that an innocent explanation may be consistent with the facts alleged does not negate probable cause, and an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause." Panetta v. Crowley, 460 U.S. 388, 395–96 (2d Cir. 2006)(internal citation and quotation omitted). In addition, "once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." Id. at 396.

Here, relying on a State Police Incident Report, the Defendants argue that probable cause supported the Plaintiff's arrest. According to that report, Skala received an anonymous tip about "a marijuana field" at a specific location and state troopers found there 54 marijuana plants and three "tree cameras" pointing toward the marijuana field. The cameras were battery operated digital cameras that contained photographs of an unknown white male subject tending to the marijuana field. The State Police sent a photograph from one of the cameras to Newsday, asking for the public's assistance in identifying the individual in the photograph. Newsday published the photograph at the State Police's request. On the day that Newsday published the photograph, Skala received an anonymous telephone call to the effect that the person in the Newsday photograph was believed to be "Michael Levantino" and that the Plaintiff's Facebook

page included a photograph matching the one printed in Newsday. Skala viewed the Plaintiff's Facebook page and found that it did have a photograph matching the individual in the photographs from the tree cameras. Meanwhile, the marijuana plants were tested and confirmed to be marijuana. A few weeks later, Skala observed the Plaintiff in person outside his apartment complex and identified him as the person tending to the marijuana field in the photographs. The Plaintiff was then arrested.

Furthermore, as memorialized in the Criminal Procedure Law § 710.30 notice, after being advised of his Miranda rights, the Plaintiff admitted resemblance between him and the suspect in the photograph published in Newsday, in particular that the individual in the photograph "definitely looks like me" and that "[i]f this is the picture you're going by, I'm screwed." (Defs' Exh. E.)

However, "[t]he [D]efendants do not cite authority for the proposition that the court may look to publicly filed documents that are not incorporated by reference into the complaint or do not otherwise parallel the allegations in the complaint to determine the probable cause defense at this juncture. While courts regularly take judicial notice of publicly filed documents in assessing motions to dismiss, they make their determination of probable cause based on the allegations on the face of the complaint." Regeda v. City of New York, No. 09-CV-5427 (KAM)(VVP), 2012 WL 7157703, at *3 (E.D.N.Y. Sept. 7, 2012), report and recommendation adopted, No. 09-CV-5427 (KAM)(VVP), 2013 WL 619567 (E.D.N.Y. Feb. 19, 2013).

Courts thus take judicial notice of such documents like a criminal court complaint "not for the truth of the matters asserted in other litigation, but rather to establish the fact of such litigation and related filings." See Conte v. County of Nassau, No. 06–CV–4746 (JFB)(ETB), 2008 WL 905879, at *7 (E.D.N.Y. Mar. 31, 2008).

For example, in <u>Wiltshire v. Williams</u>, No. 10–CV–6947, 2012 WL 899383, at \*8–9 (S.D.N.Y. March 16, 2012), the plaintiff included allegations in the complaint that he was arrested for violating an order of protection and described the circumstances of his arrest in detail.  The court found that on the basis of the "facts alleged in the Amended Complaint" that the officer had probable cause to arrest the plaintiff.  While the court found that the order of protection, a document external to the complaint, supported its conclusion, the court did not find it necessary to consider such documents to reach its conclusion. <u>Id.</u> at \* 10.  In fact, the court noted that in order to consider documents outside of the complaint that the plaintiff did not rely on, it would be obligated to convert the motion into one for summary judgment. <u>Id.</u> at \*10 n. 4. <u>accord</u> <u>Daniels v. City of New York</u>, No. 03–CV0809 (GEL), 2004 WL 1161231, at \*2 (S.D.N.Y. May 24, 2004)(taking judicial notice of an order of protection and filed complaints but concluding "the complaint on its face establishes that the officers had probable cause to arrest"); <u>Conte</u>, 2008 WL 905879, at \*9 ("For the reasons set forth supra, however, the Court will only consider those exhibits that were also appended to plaintiffs' complaint or incorporated by reference.").

In this case, the Defendants "do not assert, because they cannot, that the publicly filed documents attached to their moving papers were either attached to or incorporated by reference in the [c]omplaint." <u>Regeda</u>, 2012 WL 7157703, at \*3.  For this reason, the Court "cannot examine these documents to assess the validity of the probable cause defense in the absence of parallel allegations in the [c]omplaint." <u>Id.</u>

The Defendants' reliance on <u>Stansbury v. Wertman</u>, 721 F.3d 84, 87, 92 (2d Cir. 2013) and <u>Nzegwu v. Friedman</u>, No. 10-CV-2994 (CBA) (RML), 2014 U.S. Dist. LEXIS 44019, at \*4,

(E.D.N.Y. Mar. 31, 2014), cases in which the court held as a matter of law that the probable cause supported arrest and detainment, is misplaced. Stansbury was decided at the summary judgment stage, and Nzegwu was decided based on a motion to dismiss, or, in the alternative, for summary judgment. Thus, those courts could properly consider matters outside the complaint other than documents attached to or incorporated to the complaint.

Of course, even in the absence of probable cause, a police officer is entitled to qualified immunity where "(1) [her] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was 'objectively reasonable' for [her] to believe that [her] actions were lawful at the time of the challenged act." Jenkins v. City of New York, 478 F.3d 76, 87 (2d Cir. 2007)(internal quotation marks and citations omitted). Therefore, the Plaintiff's false arrest and false imprisonment claims turn on whether the defendant officers' probable cause determination was objectively reasonable — that is, whether there was "arguable" probable cause to arrest. Id.

While qualified immunity "is not generally understood to protect officials from claims based on state law," a comparable state law doctrine does "grant government officials qualified immunity on state-law claims except where the officials' actions are undertaken in bad faith or without reasonable basis." Mangino v. Inc. Vill. of Patchogue, 814 F. Supp. 2d 242, 250 n. 5 (E.D.N.Y. 2011)(quoting Jenkins, 478 F.3d at 86 and Jones v. Parmley, 465 F.3d 46, 63 (2d Cir. 2006)); see also Blouin ex rel. Estate of Pouliot v. Spitzer, 356 F.3d 348, 364 (2d Cir. 2004)(citing Arteaga v. State, 72 N.Y.2d 212, 216–17, 532 N.Y.S.2d 57, 527 N.E.2d 1194 (1988))("The New York courts recognize the defense of qualified immunity to shield the government official from liability unless [the official's] action is taken in bad faith or without a reasonable basis."). The law governing New York State immunity doctrine "parallels federal

qualified immunity jurisprudence." <u>Gilliard v. City of New York</u>, No. 10–CV–5187

(NGG)(CLP), 2013 WL 521529, at *12 n. 11 (E.D.N.Y. Feb. 11, 2013).

A defendant asserting a qualified immunity defense on a motion to dismiss "faces a

formidable hurdle . . . and is usually not successful." <u>Field Day, LLC v. County of Suffolk</u>, 463

F.3d 167, 191–92 (2d Cir. 2006).  The defense will succeed only where entitlement to qualified

immunity can be established "based [solely] on facts appearing on the face of the complaint."

<u>McKenna v. Wright</u>, 386 F.3d 432, 436 (2d Cir. 2004).  For this reason, a motion to dismiss "is a

mismatch for immunity and almost always a bad ground of dismissal." <u>Barnett v. Mount Vernon

Police Dep't</u>, 523 Fed. Appx. 811, 813 (2d Cir. 2013)(quotation marks and citation omitted).

"Defendants moving to dismiss a suit by reason of qualified immunity would in almost all cases

be well advised to move for summary judgment, rather than for dismissal under Rule 12(b)(6) or

12(c)." <u>Id.</u>

Here, the Court finds that the Defendants have failed to show "on the face of the

complaint" that probable cause or arguable probable cause existed to arrest and detain the

Plaintiff. <u>See</u> <u>McKenna</u>, 386 F.3d at 436.  Accordingly, at this stage of the litigation, the

Defendants cannot rely on qualified immunity to defeat the Plaintiff's proposed false arrest and

false imprisonment claims under federal and state law against Skala and Horgan.

Based on the foregoing reasons, the Court finds that the proposed false arrest and false

imprisonment claims under federal and state law against Skala and Horgan in their individual

capacities would not be futile, and grants that part of the Plaintiff's cross-motion to amend the

complaint to include these causes of action.

B.  <u>The Procedural Due Process Claims</u>

The Plaintiff also proposes to assert a procedural due process claim under the Fourteenth

Amendment against Skala and Horgan in their individual capacities. In this regard, the Plaintiff alleges that Horgan arrested and detained him without probable cause. However, the Plaintiff's procedural due process claim cannot be predicated upon the same factual basis as his Fourth Amendment false arrest and false imprisonment claims. Osuna v. City of New York, No. 08 CIV. 4759 (JSR), 2009 WL 2356424, at *6 (S.D.N.Y. July 30, 2009)(" This [procedural due process] claim is based on the same conduct that gave rise to plaintiff's now-dismissed false arrest and malicious prosecution claims, however, thus requiring plaintiff's procedural due process claim to be dismissed as both duplicative and merit less."); Rockland Vending Corp. v. Creen, No. 07–CV–6268 (KMK), 2009 WL 2407658, at *4 (S.D.N.Y. Aug. 4, 2009)("Gallagher's failure to establish an issue of material fact as to whether he was actually confined negates his claim of a deprivation of liberty for due process purposes; moreover, a due process claim relying on the same facts as a false imprisonment claim cannot be sustained even if confinement could be shown."); Ambrose v. City of New York, 02 Civ. 10200, 2009 U.S. Dist. LEXIS 27498, at *50 n. 9 (S.D.N.Y. Mar. 31, 2009)(noting that plaintiff could not "state a claim for the violation of his procedural due process rights," because such a claim was subsumed in his claims for false arrest and malicious prosecution"); Farag v. United States, 587 F. Supp. 2d 436, 450 n. 22 (E.D.N.Y. 2008)("In addition to alleging that Smith and Plunkett violated Plaintiffs' Fourth Amendment rights, plaintiffs added that the agents' actions also violated their Fifth Amendment right 'not to be denied their liberty without due process of law.' However, plaintiffs' Fourth Amendment and Fifth Amendment due-process claims are both premised on the same factual allegations of false arrest and false imprisonment. Consequently, the Fourth Amendment's specific guarantee of freedom from unreasonable seizures, not the Fifth Amendment's general guarantee of due process, provides the appropriate framework of

analysis.")(citing Gerstein v. Pugh, 420 U.S. 103, 125 n. 27, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975)("The Fourth Amendment was tailored explicitly for the criminal justice system, and it[ ] . . . always has been thought to define the 'process that is due' for seizures of person or property in criminal cases. . . .")). Therefore, to the extent the Plaintiff seeks to assert a procedural due process claim based on the same conduct supporting his false arrest and false imprisonment claims, that request is denied as futile and duplicative.

The Court next addresses the Plaintiff's assertion that Skala and Horgan deliberately delayed the processing of his paperwork in order to maximize the length of his detention. Relying on Bryant v. City of New York, 404 F.3d 128, 135 (2d Cir. 2005), the Defendants argue that this request is governed by the Fourth Amendment rather than the Due Process Clause. The Court would credit this assertion and dismiss the Plaintiff's proposed due process claim if it sounded in substantive rather than procedural due process. Compare id. ("[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.")(citations omitted) with Kuck v. Danaher, No. 3:07CV1390 (VLB), 2012 WL 4904387, at *30 (D. Conn. Oct. 16, 2012)(analyzing the plaintiff's procedural due process claim for delay of hearing in connection with the revocation of a gun permit and the denial of a gun permit renewal separate and apart from the plaintiff's claim that gun permit was unlawfully seized in violation of the Fourth Amendment), aff'd sub nom. Kuck v. Masek, 542 F. App'x 75 (2d Cir. 2013)

A detention of more than 48 hours before a probable cause hearing is presumptively unreasonable. County of Riverside v. McLaughlin, 500 U.S. 44, 56, 111 S. Ct. 1661, 114 L. Ed. 2d 49 (1991). A detention of fewer than 48 hours may also be unreasonable if it is unreasonably

prolonged, for example, "for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." Id.; Bryant, 404 F.3d at 137. While the Plaintiff's detention lasted considerably less than the threshold 48 hours laid out by the Supreme Court in McLaughlin, he alleges in his proposed amended complaint that Skala and Horgan deliberately delayed processing of paper work in order to maximize the length of his detention. Taking this allegation as true, as the Court must on a motion to dismiss, the Court finds that the Plaintiff's proposed procedural due process claim against Skala and Horgan based on their alleged deliberate delay of processing of paper work is not futile.

Further, the Defendants make no argument based on qualified immunity directed at this strand of proposed procedural due process claim. In any event, the Court finds that, based on the allegations set forth, qualified immunity would be inapplicable to such a claim. Compare Orr v. Hoke, No. 91 CIV. 1256 (LAP), 1995 WL 217541, at *3 (S.D.N.Y. Apr. 12, 1995)("There can be no doubt that a reasonable person would have known on April 19, 1990 that deliberate delay in providing a prisoner medical attention upon knowledge of his medical condition would violate the clearly established rights of the prisoner. If plaintiff's allegations are proven true at trial, [the relevant individual defendants] would not be immune from liability.").

However, the Court reaches a different conclusion with respect to the Plaintiff's assertion that Skala and Horgan "fabricated evidence," (Proposed Amended Compl., at ¶ 150.) by telling the Plaintiff that they had followed him for six months and witnessed him at the marijuana farm. "A § 1983 plaintiff who claims that a state official manufactured false evidence against him for use in state criminal proceedings invokes the protection of the Due Process Clause of the Fourteenth Amendment." Hoyos v. City of New York, 999 F. Supp. 2d 375, 393 (E.D.N.Y.

2013)(citing <u>Zahrey v. Coffey</u>, 221 F.3d 342, 348 (2d Cir. 2000)). The proposed amended complaint does not allege that Skala and Horgan provided the alleged lies to prosecutors for use as evidence in a state criminal proceeding against the Plaintiff. Accordingly, to the extent the Plaintiff seeks to assert a procedural due process claim against Skala and Horgan based on the alleged fabricated evidence, that request is denied as futile.

C. <u>The Search and Seizure Claim</u>

The Fourth Amendment to the U.S. Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." In this case, the Plaintiff seeks to assert a claim against Skala and Horgan in their individual capacities that they violated his Fourth Amendment rights by engaging in an illegal search of his home; his person; and his belongings. The Defendants counter that, even assuming the Plaintiff did not consent to Horgan entering his apartment, it was reasonable for Skala and Horgan to enter the apartment to check whether there might be any readily accessible weapon or any person who might attack them.

However, the Defendants' argument presupposes an otherwise valid arrest based on probable cause, an issue the Plaintiff contests. In this regard, the Defendants' reliance on <u>United States v. Adams</u>, No. 92 CRIM. 375 (LBS), 1992 WL 275596 (S.D.N.Y. Sept. 25, 1992) is misplaced. In that case, unlike here, the suspect was arrested "pursuant to a warrant" and "were legally in the apartment." <u>Id.</u> at *2.

Similarly, with regard to the Plaintiff's proposed challenge to the search of his person, the cases, <u>Virginia v. Moore</u>, 553 U.S. 164, 176, 128 S. Ct. 1598, 170 L.Ed.2d 559 (2008)("We have recognized . . . that officers may perform searches incident to <u>constitutionally</u> permissible arrests in order to ensure their safety and safeguard evidence.")(emphasis added) and

Abdul-Rahman v. City of New York, No. 10 CIV. 2778, 2012 WL 1077762, at *6 (E.D.N.Y. Mar. 30, 2012)("Under the Fourth and Fourteenth Amendments, an arresting officer may, without a warrant, search a person <u>validly</u> arrested.")(emphasis added) are distinguishable.

The same logic applies to the Plaintiff's proposed challenge to the search of his belongings. <u>Compare</u> <u>United States v. Scott</u>, 223 F. App'x 80, 82 (2d Cir. 2007)(Following the <u>valid</u> arrest, the police were permitted to impound the vehicle and conduct an inventory search pursuant to standard procedures.")(emphasis added).

Accordingly, insofar as the Plaintiff seeks to assert an unlawful search and seizure claim against Skala and Horgan, such a claim would not be futile, and, therefore, the cross-motion to amend the complaint to include this cause of action is granted.

D. <u>The Prima Facie Tort Claim</u>

Under New York law, "'[t]he elements of prima facie tort are (1) the intentional infliction of emotional harm, (2) which results in special damages, (3) without any excuse or justification, (4) by act or series of acts that would otherwise be lawful.'" <u>Fordham v. Islip Union Free Sch. Dist.</u>, 662 F. Supp. 2d 261, 277 (E.D.N.Y. 2009)(quoting <u>T.S. Haulers, Inc. v. Town of Riverhead</u>, 190 F. Supp. 2d 455, 465 (E.D.N.Y. 2002)).

However, a *prima facie* tort claim is not an available remedy when the complaint states colorable allegations for other, more traditional tort claims. <u>Siotkas v. LabOne, Inc.</u>, 594 F. Supp. 2d 259, 276 (E.D.N.Y. 2009)( "Because, as discussed above, the facts alleged in plaintiffs' ;complaints give rise to traditional common-law tort claims, plaintiffs' causes of action for intentional and prima facie tort should be dismissed."); <u>Silver v. Kuehbeck</u>, No. 05 Civ. 35(RPP), 2005 WL 2990642, at *14 (S.D.N.Y. Nov. 7, 2005)("[Plaintiff's] prima facie tort claim must be dismissed because it alleges no facts not included in his other claims for relief, and it

completely overlaps the other claims alleged in the Complaint. To the extent that allegations provide grounds for other causes of action included in the Complaint, those allegations cannot give rise to a prima facie tort claim."); <u>Tasso v. Platinum Guild Int'l</u>, No. 94 CIV. 8288 (LAP), 1997 WL 16066, at *5 (S.D.N.Y. Jan. 16, 1997)("Because plaintiff has succeeded in stating claims for defamation and intentional interference, her prima facie tort claim must fail.").

Here, the Plaintiff's allegations against Skala and Horgan are encompassed by traditional tort concepts of false arrest and/or false imprisonment.

Furthermore, even if the Plaintiff's allegations against Skala and Horgan were not encompassed by these traditional claims, the Plaintiff fails to plead damages with the requisite specificity. <u>Kuklachev v. Gelfman</u>, 600 F. Supp. 2d 437, 478–79 (E.D.N.Y. 2009)("'Special damages' is defined as a 'specific and measurable loss,' . . . and must be alleged with sufficient particularity to identify actual [losses] and be related causally to the alleged tortious acts.")(internal citations and quotations omitted); <u>John & Vincent Arduini Inc. v. NYNEX</u>, 129 F. Supp. 2d 162, 174 (N.D.N.Y. 2001)("Given that the purpose of the special damages pleading requirement is to put Plaintiff on notice as to the exact losses claimed, it is axiomatic that Plaintiff's failure to trace its alleged losses to specific contracts renders its prima facie tort claim invalid."). The Plaintiff has not alleged special damages. Therefore, a *prima facie* tort claim against Skala and Horgan would be futile and would be subject to dismissal on that ground. Accordingly, the Court denies the Plaintiff's cross-motion to amend to the extent he seeks to assert a *prima facie* tort claim against Skala and Horgan.

E.  The Declaratory Judgment and Injunctive Relief Requests Against Skala and Horgan in Their Official Capacities

The Plaintiff also seeks to assert a claim for a prospective declaratory judgment and injunctive relief against Skala and Horgan in their official capacities.

Under Ex Parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), a "plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that [her] complaint[:] (a) alleges an ongoing violation of federal law[;] and (b) seeks relief properly characterized as prospective." Clark v. DiNapoli, 510 F. App'x 49, 51 (2d Cir. 2013)(internal quotation marks and citation omitted). The Supreme Court has held that "[i]n determining whether the doctrine of Ex Parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" Verizon Maryland Inc. v. Public Serv. Comm. Of Maryland, 535 U.S. 635, 122 S. Ct. 1753, 1760, 152 L. Ed. 2d 871 (2002)(quoting Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 296, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment). The inquiry "does not include an analysis of the merits of the claim." Id. at 1761.  "Nevertheless, declaratory relief, while equitable in nature, is barred by the Eleventh Amendment 'when it would serve to declare only past actions in violation of federal law; retroactive declaratory relief cannot be properly characterized as prospective.'" Neroni v. Coccoma, No. 3:13–cv–1340 (GLS)(DEP), 2014 WL 2532482, at *9 (N.D.N.Y. June 5, 2014)(quoting Kent v. New York, (MAD)(CRH), 2012 WL 6024998, at *7 (N.D.N.Y. Dec. 4, 2012)(internal quotation marks and citation omitted)).

In this case, the Plaintiff fails to plausibly allege an ongoing violation of federal law on the part of Horgan in his official capacity. Therefore, to the extent the Plaintiff seeks to assert a claim for declaratory and injunctive relief against Horgan in his official capacity, the cross-motion is denied as futile.

Inasmuch as the Plaintiff seeks equitable relief in the form of "correction action," apparently based on state law, that claim is barred by the Eleventh Amendment. Siani v. State Univ. of New York at Farmingdale, 7 F. Supp. 3d 304, 316 (E.D.N.Y. 2014)("[t]he Eleventh Amendment bars all suits against states in federal court based on state law, regardless of the relief sought.")(emphasis added). Therefore, to the extent the Plaintiff seeks to assert a state law claim for equitable relief against Horgan in his official capacity, the cross-motion is denied as futile.

F.  The John Doe Claims

"It is well settled in this Circuit that [the] 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)(quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir.1991)). "A defendant may be personally involved in a constitutional deprivation within the meaning of 42 U.S.C. § 1983 . . . [if t]he defendant . . . directly participated in the infraction." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986).

In addition, with regard to the proposed claims under New York state law, personal involvement on the part of the defendant is also a prerequisite to liability for false arrest, false imprisonment, and prima facie tort. Masihuddin v. Gavin, No. 10 CIV. 06006 (GBD)(SN), 2014 WL 1091157, at *3 n. 8 (S.D.N.Y. Mar. 17, 2014)("Plaintiffs similarly have failed to make any

showing that Banton and Bruneus were personally involved in tortious conduct pertaining to Plaintiffs' supplemental state law claims.").

Here, the only factual allegations specific to "John Doe" in the proposed amended complaint are that (1) during the Plaintiff's s encounter with Skala and Horgan outside his apartment complex, he saw a third individual, "presumably officer Doe," "standing some distance away," who "appeared to be watching," (Proposed Amended Compl, at ¶ 22, 28), and (ii) the Plaintiff later saw Skala speaking with that individual. (Id. at ¶ 44.)

In the Court's view, the Plaintiff fails to set forth sufficient allegations in the proposed amended complaint as to how "John Doe" was personally involved in any constitutional deprivation or deprivation under state law. Accordingly, the Court denies as futile the Plaintiff's cross motion to amend to the extent he seeks to assert any claims against John Doe.

## III.     CONCLUSION

Based on the foregoing reason, the Court denies as moot the Rule 12(b)(6) motion by Skala and the State Police to dismiss the original complaint, and grants in part and denies in part the Plaintiff's cross-motion to amend the complaint. In particular, the Court grants the cross-motion to amend the complaint to the extent the Plaintiff seeks to (1) remove the New York State Police as a defendant; (2) remove the equal protection claim, the "punishment" claim under the Eighth and Fourteenth Amendment, the negligence claim, the gross negligence claim, as well as the expunging request; (3) assert claims for false arrest and false imprisonment under federal and state law against Skala and Horgan in their individual capacities; (3) assert a procedural due process claim against Skala and Horgan in their individual capacities based on their alleged deliberate delay of processing of paper work; (4) assert an unlawful search and seizure claim under the Fourth Amendment against Skala and Horgan in their individual capacities.

The cross-motion is denied to the extent the Plaintiff seeks to (1) assert a procedural due process claim against Skala and Horgan in their individual capacities based on the same conduct supporting his false arrest and false imprisonment claim or that they fabricated evidence; (2) assert *prima facie* tort claims against Skala and Horgan in their individual capacities; (3) assert requests for declaratory or injunctive relief or corrective action against Skala and Horgan in their official capacities; and (4) assert any claims against John Doe Defendant.

The Clerk of the Court is respectfully directed to terminate the New York State Police and John Doe #2 as Defendants, and add Brian Horgan in place of John Doe #1 as a defendant.

The Plaintiff is directed to file a second amended complaint, with an amended caption, consistent with this Memorandum of Decision and Order within 10 days of the date of this order.

**SO ORDERED.**

Dated: Central Islip, New York
November 3, 2014

　　　　　　　　　　　　　　　__*Arthur D. Spatt*_____
　　　　　　　　　　　　　　　　ARTHUR D. SPATT
　　　　　　　　　　　　　　　United States District Judge